UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| GREGORY ASHFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  11-CV-3041 |
| | ) |
| DR. SHAH, TARA GOINS, and | ) |
| MAJOR S. MCKEE, | ) |
| | ) |
| Defendants. | ) |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se, alleges deliberate indifference to his serious medical need for treatment for a fractured index finger, an injury which he incurred during his incarceration in Western Illinois Correctional Center in the Fall of 2009. Now before the Court are Defendants' respective motions for summary judgment, which will be granted for the reasons below.

SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that

1

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B).  If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists.  Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011).  "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

FACTS

The events occurred during Plaintiff's incarceration in Western Illinois Correctional Center. On November 12, 2009, Plaintiff fractured his index finger in a fight with another inmate. He was given ice, Motrin, and an Ace wrap. An x-ray taken the next day showed a "fracture of the distal end of the second metacarpal with slight volar angulation of the distal fracture fragment." (11/16/09 radiology report, attached to Amended Complaint, d/e 21.)

Defendant Dr. Shah worked at the time for Wexford Health Sources, Inc. ("Wexford"), as a traveling doctor for various prisons and jails. Dr. Shah examined Plaintiff on November 20, 2009, prescribed Motrin, and advised Plaintiff to keep his hand elevated. He also put in a request to send Plaintiff for an orthopedic consult, indicating the consult was urgent, and approved Plaintiff for a low bunk permit. (Def. Shah's Undisp. Fact 11, d/e 42.) Dr. Shah saw Plaintiff again three days later

and noted "ok to see hand specialist." (11/23/09 medical progress note, d/e 42-2, p. 12.) A few days later Plaintiff was approved for referral to an orthopedist by Dr. Agrawal, who worked in "Utilization Management" at Wexford Health Sources. (Def. Shah Undisp. Fact 14, d/e 42.)

On December 21, 2009, Plaintiff was taken to see orthopedist Dr. Mark Greene. Another x-ray was taken which showed "[o]ld healing fracture seen at the distal end of the second metacarpal with the callus [new bone growth] in satisfactory alignment." (12/21/09 x-ray, attached to Amended Complaint, d/e 21)(bracketed material added by Defendant Shah.) Dr. Greene recommended that the injured finger be "buddy taped" to the second finger, advised Plaintiff to work on his range of motion, and recommended a six-week follow up appointment. (outpatient progress note attached to Amended Complaint, d/e 21, p. 22.). According to Plaintiff, Dr. Greene told him at this appointment there was nothing he could do because the fracture had already started healing. (Amended Complaint ¶ 10, d/e 21; Pl.'s Dep p. 17, d/e 42-1.) Plaintiff understood this to mean that his hand had not healed properly,

that the delay in getting him to Dr. Greene was to blame, and that the finger would have to be rebroken in order to set it correctly.

On January 12, 2010 another x-ray was taken, which showed "significant healing change and callus formation seen in the distal shaft of the second metacarpal without positional change from 11-13/2009." (1/14/10 radiology report, attached to Amended Complaint, d/e 21.) Dr. Shah's notes from this day state that the hand was healing and contemplated a follow up with Dr. Greene. (Def. Shah's Undisp. Fact 26, d/e 42). Dr. Shah contacted Wexford for a referral to Dr. Greene for the follow up, but Wexford determined that Plaintiff would be monitored on site. (Shah Aff. ¶ 29, d/e 42-6; Non Approved Wexford Form dated 1/25/2010, d/e 42-2.) The plan was for Dr. Shah to monitor the healing and, if need be, put in again for a consult with Dr. Greene.

On February 1, 2010, Dr. Shah again discussed with Wexford's Utilization Management Department the possibility of a referral to Dr. Greene. Denying the request, Wexford instead recommended that Dr. Shah call Dr. Greene to clarify the latter's recommendations. (Non

Approved Wexford Form dated 2\8\10, d/e 42-2, p. 36.)  Dr. Shah appealed the denial, which Wexford again denied, instructing Dr. Shah again to call Dr. Greene.  (Non Approved Wexford Form dated 2\8\10, d/e 42-2, p. 36.)  Dr. Shah left messages for Dr. Greene on March 3 and March 9, 2010, but received no return call.

On May 11, 2010, a Wexford Utilization Management doctor approved Plaintiff for a follow up visit with Dr. Greene.  Dr. Greene saw Plaintiff on June 14, 2010, and noted that Plaintiff had "40 degree flexion, full extension, and a smooth slight catch." (Def. Shah's Undisp. Fact 41, d/e 42.)  Dr. Green scheduled orthopedic surgery for an "implant arthroplasty." Id.  Dr. Shah does not explain this procedure, but the Court believes that the procedure involves "creation of an artificial joint to correct advanced degenerative arthritis."  Stedman's Medical Dictionary (28th Ed. 2006).

The surgery was approved by Wexford and performed on July 8, 2010.  Plaintiff's physical and history from that date states "This is a male patient who sustained a fracture of the second metacarpal head at

6

the MP joint while fighting in November of 09.  This went on to a traumatic arthrosis."  (7/8/10 Passavant H & P, attached to Plaintiff's Amended Complaint, d/e 21, p. 26).  According to Stedman's Medical Dictionary (28th ed. 2006), arthrosis means "degenerative joint changes," also known as osteoarthritis, and "traumatic" means "relating to or caused by trauma."

Dr. Green's postoperative report diagnosed a "fracture of the head of the second metacarpal with relatively good appearing cartilage."  The report also stated the Plaintiff had "injured his right second metacarpal with fracture around the neck and head of the metacarpal.  This went on to heal but he had stiffness and pain.  X-ray showed arthrosis of that joint."  (7/8/10 postoperative report, attached to Amended Complaint, d/e 21, p. 27.)

Dr. Greene ended up not doing an implant arthroplasty because he "couldn't see enough erosion of the cartilage to justify" that procedure. Id.  He instead did a "synovectomy," which, according to Stedman's Medical Dictionary (28th ed. 2006), is an "excision of a portion or all of

7

the synovial membrane of a joint."

Post-surgical medical records indicate that the surgery went well and that Plaintiff's finger healed well with a good range of motion. (Def. Shah's Undisp. Facts 50-60.) However, Plaintiff testified in his deposition that he continues to experience limited range of motion and pain. (Pl.'s dep. pp. 63-66, d/e 42-1.)

## ANALYSIS

Plaintiff's claim falls under the Eighth Amendment to the Constitution, which prohibits the cruel and unusual punishment of prisoners. In the context of medical care, cruel and unusual punishment occurs when a Defendant is deliberately indifferent to a serious medical need of a prisoner:

> A prisoner's claim for deliberate indifference must establish "(1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition." Arnett, 658 F.3d at 750. Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." Id. at 751.

Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012). A condition can

be considered serious if, without treatment, the plaintiff suffered "'further significant injury or unnecessary and wanton infliction of pain.'" <u>Id.</u>

Plaintiff's fractured finger was a serious medical need, but no evidence suggests that his injury was not treated properly or that Dr. Shah was deliberately indifferent to that injury.

Plaintiff claims that the delay in scheduling him to see Dr. Greene and scheduling surgery caused him permanent injury, but this conclusion is based on speculation. The x-rays show that Plaintiff's injury was healing in "satisfactory alignment" and "without positional change." Dr. Greene's postoperative report also described the fracture as healed and that Plaintiff's cartilage was in good condition. In short, nothing supports Plaintiff's theory that his finger had healed improperly, or that a quicker referral and surgery would have changed the outcome.

Even if a delay in referral and surgery caused harm to Plaintiff, Dr. Shah was not responsible for those delays. Dr. Shah was the one who tried to obtain a referral for Plaintiff, and kept trying until the referral

was approved.  He cannot be held liable for the decisions of Wexford's utilization doctors.  Nothing in the record suggests that Dr. Shah's actions failed to meet the standard of care, much less that they were deliberately indifferent.

Plaintiff testified in his deposition that his "hand was in pain constantly every day, and only thing I was told is to hold my hand up and the pain will calm down." (Pl.'s Dep. p. 23, d/e 42-1.)  He argues in his response that he "endured excruciating an[d] intense pain and suffering" during the nine months until he had surgery.  (Pl.'s Resp., d/e 45, p. 3.)  He concedes that Dr. Shah prescribed ibuprofen during the entire period, but he contends that this did not alleviate his pain. <u>Id.</u> According to Plaintiff, Dr. Shah told him that he was not permitted to prescribe any other pain medicine.  (Pl.'s Dep. p. 23, d/e 42-1.)  Dr. Shah denies that Plaintiff made complaints of prolonged, severe pain and avers that in his medical judgment the ibuprofen he prescribed was the appropriate medicine for the kind of injury Plaintiff had suffered.

Plaintiff's argument that he suffered excruciating pain for nine

months is not supported by the record. His medical records do not memorialize complaints of that kind of pain, even the medical records from Dr. Greene and the hospital. Plaintiff's only grievance in the record, filed on January 15, 2010, complains about his hand being improperly healed, not about any problem with pain management. (1/15/10 grievance, attached to Complaint, d/e 21.) Additionally, Plaintiff has no evidence to dispute Dr. Shah's averment that ibuprofen was an appropriate and effective medicine for Plaintiff's kind of injury. Ice, ace bandages, and a low bunk permit also helped Plaintiff alleviate or avoid pain.

In short, no evidence in the record suggests that anyone was deliberately indifferent to Plaintiff's pain or to his injury. Summary judgment is thus mandated for Dr. Shah and for Defendants Goins and McKee, who recommended denial of Plaintiff's grievance.

IT IS THEREFORE ORDERED:

1) Defendants' motions for summary judgment are granted (d/e's 41, 43). The clerk of the court is directed to enter judgment in favor of

Defendants and against Plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs. All deadlines and settings on the Court's calendar are vacated.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis should identify the issues Plaintiff will present on appeal. See Fed. R. App. P. 24(a)(1)(c).

ENTERED: August 23, 2012

FOR THE COURT:

                                               s/Sue E. Myerscough
                                    SUE E. MYERSCOUGH
                                    UNITED STATES DISTRICT JUDGE